IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

TORI L. ADAMS, *et al.*,　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　Plaintiffs,　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　　)　　CASE NO.  2:11-CV-621-WKW
　　　　　　　　　　　　　　　　　)　　　　　　　[WO]
OFFICE OF THE ATTORNEY　　　　　)
GENERAL, STATE OF　　　　　　　　)
ALABAMA, *et al.*,　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　Defendants.　　　　　　　)

## MEMORANDUM OPINION AND ORDER

　　　This case involves the office politics of a political office.  Plaintiffs Tori L.

Adams and Gerrilyn V. Grant worked at the Alabama Attorney General's Office for

decades, but they never got the promotions they think they deserved.  They blame

former Attorney General Troy King for stymieing their professional growth and

retaliating against them when they complained.

　　　Ms. Adams and Ms. Grant want to hold Defendants AG King[1] and the Office

of the Attorney General (the "OAG") accountable under Title VII, 42 U.S.C. § 2000e

*et seq.*, and 42 U.S.C. § 1981.  Defendants move for summary judgment. (Docs. # 47,

---

[1] Plaintiffs also name current Attorney General Luther Strange as a Defendant, but only
in his official capacity, and only for prospective relief.  The claims against AG Strange, which all
allege violations of §1981, fail for the same reasons as the claims against AG King, and this
opinion will not treat them separately.

48.) For the reasons that follow, summary judgment is due on all the claims against AG King and AG Strange, and all but one of the claims against the OAG.

## I. JURISDICTION AND VENUE

Subject matter jurisdiction is proper under 28 U.S.C. § 1331. Personal jurisdiction and venue are uncontested.

## II. STANDARD OF REVIEW

To succeed on summary judgment, the movant must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence and the inferences from that evidence in the light most favorable to the nonmovant. *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. *Id.* A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable factfinder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001). If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to

establish – with evidence beyond the pleadings – that a genuine dispute material to each of its claims for relief exists. *Id.* at 324.

In Title VII cases, the court's application of the summary-judgment standard is guided by the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Crawford v. Carroll*, 529 F.3d 961, 975–76 (11th Cir. 2008). Under that framework, a plaintiff bears the initial burden of presenting evidence that establishes a prima facie violation of Title VII. *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1293 (11th Cir. 2002). Should the plaintiff establish a prima facie case, the defendant must present a legitimate, nondiscriminatory reason for the employment action. *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997) (citations omitted). If the defendant cannot carry that burden, summary judgment is not warranted. But if the defendant succeeds, the court must grant summary judgment unless the plaintiff produces sufficient "evidence to find that the employer's asserted justification is false" and in reality, a pretext for unlawful intentional discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000).

### III. FACTUAL AND PROCEDURAL BACKGROUND

For most of her career, Plaintiff Gerrilyn Grant worked as a prosecutor in the Violent Crimes Division of the AG's Office. During that time, Ms. Grant worked

under Don Valeska, the division chief.  As Ms. Grant saw it, she was next in line for Mr. Valeska's job.

But that changed in 2008 when AG King transferred Ms. Grant (over her objection) to the Division of Administrative Hearings (the "DAH").  Ms. Grant started work as an administrative law judge ("ALJ") in February 2008, but AG King told her she would soon become the next chief of the DAH.[2]  That move did not go over well with Plaintiff Tori Adams, who had been working at the DAH for nearly a decade.  Ms. Adams wanted to be chief, and she did not like that AG King had promised the job to Ms. Grant.

In August 2008, AG King made Julia Weller (a white woman) the new chief of the DAH, passing over both Ms. Grant and Ms. Adams (both black) in the process.  According to AG King, he still intended to make Ms. Grant chief eventually, but first he wanted Ms. Weller to set up a new case management system for the division because he was unsatisfied with the one then in place.  Ms. Grant and Ms. Adams both thought they were better qualified than Ms. Weller.

---

[2]  This provoked Ms. Grant to write a memo.  (Doc. # 49-2, at 150–52.)  In that memo, Ms. Grant describes her efforts to convince AG King she was unqualified to be an ALJ: "I argued strenuously that I was not trained for or experienced enough[ ] for the DAH caseload and should not be transferred."  (Doc. # 49-2, at 151.)  At the time of her transfer, Ms. Grant had "very minimal civil experience, including no civil trial and limited administrative hearing experience," and "no experience presiding at any type of legal proceeding."  (Doc. # 49-2, at 151.)

As it turns out, Ms. Grant was never promoted to chief.  In December 2008, AG King lost faith in the DAH and dramatically reduced its operations.  Ms. Weller stayed on as the division's sole hearing officer; Ms. Adams and Ms. Grant were both transferred to different divisions.  Not long after, Ms. Adams and Ms. Grant retired.

On August 3, 2011, Ms. Adams and Ms. Grant filed this lawsuit against AG King and the OAG.  They complain about AG King's refusal to give either of them a chance to work as chief of the DAH, along with a list of other job-related gripes.  AG King and AG Strange stand accused of racial discrimination in violation of § 1981.[3]  The OAG is accused of discrimination, both racial and sexual, and retaliation in violation of Title VII

The matter comes before the court on motions for summary judgment from both Defendants.

## IV.  DISCUSSION

At its core, this case involves a single triable claim of Title VII discrimination between Ms. Grant and the OAG.  This opinion will address that claim first; then it

---

[3] Plaintiffs bring their § 1981 claims as violations of 42 U.S.C. § 1983.  *See Bryant v. Jones*, 575 F.3d 1281, 1288 n.1 (11th Cir. 2009) ("[Section] 1983 constitutes the exclusive federal remedy for violation by state actors of the rights guaranteed under § 1981").

will explain why summary judgment is due on the rest of the discrimination claims and all of the ones for retaliation.[4]

## A.   Ms. Grant's evidence presents a triable claim of discrimination based on Ms. Weller's promotion to chief of the DAH.

When AG King transferred Ms. Grant to the DAH, he promised she would be the next chief.  But Ms. Grant claims that was a promise AG King never intended to keep.  She says AG King was motivated by race when he appointed a white woman, Ms. Weller, to the spot instead.  As the following discussion will show, that instance amounts to a triable claim of racial discrimination under Title VII, but not under § 1981.

### 1.    Ms. Grant's Title VII claim based on Ms. Weller's promotion survives.

In order to establish a prima facie case of discrimination based on a failure to promote, Ms. Grant must demonstrate that: (1) she belonged to a protected class; (2) she was qualified for and applied for a position; (3) despite qualifications, she was rejected; and (4) the position was filled with an individual outside the protected class. *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1348 (11th Cir. 2007).  Defendants dispute that Ms. Grant can establish a prima facie case of

---

[4] This opinion will not address Defendants' arguments regarding claims for constructive discharge or a hostile work environment.  If the amended complaint ever stated any such claims (it is not clear that it does), Plaintiffs have since abandoned them.

discrimination based on Julia Weller's promotion to chief, and they offer two arguments to that effect.

First, Defendants argue that the move from ALJ to division chief does not "rise to the level of a promotion." (Doc. # 52, at 37.) But a Title VII failure-to-promote claim will lie if a plaintiff shows "that the position [she] desired had a greater wage or salary, a more distinguishable title, *or* significantly more responsibilities." *Johnson v. Fulton Concrete Co.*, 330 F. Supp. 2d 1330, 1339 (N.D. Ga. 2004) (emphasis added). While it is true that the promotion to chief would not have given Ms. Grant a higher salary, no one disputes that the title would have carried significantly more prestige and greater responsibility than her job as an ALJ. That added level of prestige and responsibility is sufficient to support a Title VII failure-to-promote claim.

Second, Defendants argue that Ms. Grant was not rejected for the promotion to chief of the DAH. That argument ignores a rather inconvenient fact: Ms. Grant never got that job. Perhaps it is true, as Defendants contend, that AG King intended at some point to promote Ms. Grant to chief. But it is indisputedly true that he never did. Apparently, Defendants think there is some meaningful difference between that and a rejection, but they cite no authority to that effect. The basic facts are

undisputed:  Both women wanted the job; Ms. Weller got it; Ms. Grant did not.  The court is satisfied that amounts to a rejection.

Thus, Ms. Grant has established a prima facie case of discrimination based on Ms. Weller's promotion to chief.

The burden now shifts to AG King to provide a legitimate reason for Ms. Weller's promotion.  To that end, Defendants submit evidence that AG King hired Ms. Weller in order to implement a new case management system.[5]  Before Ms. Weller's arrival, AG King asked the chief of the DAH for statistical information about the department's caseload.  AG King found that no one was tracking that information, at least not to AG King's satisfaction.  That deficiency prompted AG King to appoint Ms. Weller, who had experience developing caseload management systems, to the top spot in the DAH.  According to AG King, he only intended for Ms. Weller to be division chief on an interim basis, with Ms. Grant to assume that responsibility once the division was in order.

But Ms. Grant argues those reasons are pretextual, and she submits undisputed evidence suggesting AG King's legitimate, nondiscriminatory reasons were not his

---

[5]  Plaintiffs object to much of the evidence Defendants cite in support of this explanation. (*See* Doc. # 57 (moving to exclude evidence submitted in support of Defendants' Motion for Summary Judgment).)  The court need not rule on those objections, however, because the challenged evidence does not affect this opinion's conclusions.

true motivation:  Ms. Weller never did develop a caseload management system, and as far as the court can tell she still occupies her "interim" position.  If AG King really hired Ms. Weller to implement a caseload management system, a reasonable juror might expect that she would have eventually done so.  And if Ms. Weller was really only meant to serve as an interim chief until Ms. Grant took over, a reasonable juror might be surprised that Ms. Weller kept her job when the division was downsized while Ms. Grant was transferred to another division.

At this stage, the court need not determine whether to take AG King at his word; it suffices that Ms. Grant has presented enough evidence to create a genuine issue of material fact.  The jury can sort it out at trial.

2.      *Summary judgment is due on Ms. Grant's § 1981 claim based on Ms. Weller's promotion.*

The substantive analysis of Ms. Grant's § 1981 failure-to-promote claims based on Ms. Weller's promotion mirrors that of her Title VII claim, so those claims do not fail on the merits.  But Defendants argue that summary judgment is due on those claims for a different reason: Ms. Grant filed this lawsuit too late.  If Ms. Grant's claims are subject to a two-year limitations period, AG King is right.  But Ms. Grant thinks a four-year limitations period should apply, in which case her claims are timely.      When § 1981 was enacted, it lacked a corresponding federal statute of

limitations.  As a result, courts borrowed "the most appropriate or analogous state statute of limitations."  *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987).  In Alabama, that came to mean § 1981 claims were subject to a two-year limitations period.  *See Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1484 (11th Cir. 1989).  In the early 90s, Congress decided federal law should define the limitations periods on federal claims, so it enacted a four-year catchall limitations period, 28 U.S.C. § 1658.  That limitation period only applies, however, to federal statutes enacted after December 1, 1990.

This is where it gets tricky.  Section 1981 was *enacted* before December 1, 1990, but it was *amended* after that date to create new causes of action.  So some § 1981 claims (those that would have been allowed under the statute's old language) are subject to a two-year limitations period, while others (those made possible by the 1991 amendments) are subject to a limitations period of four years.  *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004).  The question, then, is whether Ms. Grant's failure-to-promote claims would have been actionable under the old version of § 1981.

The answer is yes.  Even under the old version of § 1981, a plaintiff could maintain a failure-to-promote claim if the promotion she sought would have amounted to "an opportunity for a new and distinct relation between the employee

and the employer." *Patterson v. McLean Credit Union*, 491 U.S. 164, 185 (1989),

*superseded by* 42 U.S.C. § 1981(b), *as recognized in Landgraf v. USI Film Prods.*,

511 U.S. 244, 251 (1994).   Here, the promotion Ms. Grant wanted would have

entailed significant new responsibilities – she would have gone from writing opinions

to running a division.   Defendants have submitted evidence that the chief of the DAH

is responsible for supervising other attorneys (*e.g.*, assigning cases, doing

performance evaluations, and recommending pay raises), reviewing decisions,

meeting weekly with the Attorney General, and directing operations for the division

as a whole.   (Doc. # 51 at 34–35.)   True, Ms. Grant would not have gotten a raise if

she was promoted to chief – she was already at the highest possible pay grade.   But

considering the added authority and responsibility that comes with the title, the court

has no trouble concluding the promotion from ALJ to chief of the DAH amounts to

a new and distinct employment relationship.

So Ms. Grant's discrimination claims based on her failure to get that promotion

would have been cognizable under the old version of § 1981.   As a result, those

claims are subject to the old two-year limitations period.   Because Ms. Grant filed this

action more than two years after AG King passed her over for the promotion to chief

of the DAH, her claims based on that incident are time barred.

**B.    Summary judgment is due on the rest of Plaintiffs' discrimination claims.**

Aside from Ms. Grant being passed over for the promotion to chief of the DAH, Plaintiffs complain about a variety of other instances in which they think Defendants discriminated against them in violation of Title VII and § 1981. Each will be addressed in turn with an explanation why none of them amounts to a triable claim of discrimination.

### 1.    Ms. Adams never got a pay raise to Attorney IV.

Most of the attorneys in the OAG, including Ms. Adams, are classified employees in the state merit system.  Among other things, merit-system employees are subject to a structured pay scale that involves three classifications (Attorney I/II, Attorney III, and Attorney IV).  Attorneys who move up to a higher classification get a pay raise.  Ms. Adams made it to Attorney III in 1998, and there she stopped.  She was never promoted to Attorney IV.

But AG King undisputedly promoted two white men to Attorney IV while he was in office.  Ms. Adams thinks those promotions give rise to triable claims of racial discrimination under Title VII and § 1981.  Neither does.

### a.    Title VII

If Ms. Adams suffered any discrimination when she was passed over for a raise to Attorney IV, she should have said so sooner.  It is undisputed that Ms. Adams failed to file a charge of discrimination with the Equal Employment Opportunity

Commission within 180 days after any of those promotions.  (Doc. # 64, at 60–61.) Thus, the Title VII claims Ms. Adams would pursue based on promotions to Attorney IV are time barred.  *See* 42 U.S.C. § 2000e-5(e)(1) (requiring charge of discrimination to be filed "within 180 days after the alleged unlawful employment practice").

### b.   Section 1981

Defendants argue Ms. Adams's § 1981 claims based on the Attorney IV promotions are time barred too because she did not file this suit within the applicable two-year limitations period.  But as discussed above, some § 1981 claims are subject to a four-year limitations period, and this opinion assumes *arguendo* that Ms. Adams's claims based on the Attorney IV promotions fall into that category.[6]

Within the four years preceding this suit, AG King only promoted two people outside of Ms. Adams's protected class to Attorney IV:  Ferris Stephens and William Lisenby.[7]  With respect to those promotions, Defendants do not deny that Ms. Adams can establish a prima facie case of discrimination.  Thus, Defendants are not entitled to summary judgment unless AG King had a legitimate, nondiscriminatory reason to promote Messrs. Stephens and Lisenby instead of Ms. Adams.

---

[6]  No party disputes that any claims based on promotions that occurred more than four years before Plaintiffs filed this lawsuit are time barred, and the court has already issued a ruling to that effect.  (Doc. # 28, at 10.)

[7]  The only other person AG King promoted to Attorney IV during the relevant time period was a black woman.

Defendants meet that burden.  According to AG King, he promoted Messrs. Stephens and Lisenby based on three factors.  First, both men had experience as supervisors; Ms. Adams, on the other hand, had none.  Second, both men were experienced attorneys who had been practicing law for at least five years longer than Ms. Adams.  Third, and perhaps most importantly, AG King was impressed with the way those men performed their duties, while he did not have a favorable impression of Ms. Adams's intellectual capacity.  On that final point, AG King based his opinion on Ms. Adams's repeated failure to pass the bar exam (she passed on the fourth try)[8] and his experience with her work.  Defendants have offered legitimate reasons – both objective and subjective – for AG King's decisions to promote Messrs. Stephens and Lisenby.  The burden is back on Ms. Adams; she must provide evidence those reasons are pretextual.

But she cannot rebut the legitimate reasons for those promotions.  Nowhere in Ms. Adams's brief are the names Ferris Stephens and William Lisenby mentioned more than in passing, and that brief devotes no discussion whatsoever to their qualifications or the articulated reasons for their promotions.  Thus, AG King is

---

[8]  Plaintiffs claim (without an evidentiary citation) that other employees of the Attorney General's Office failed the bar on their first try, including "an attorney named Dan."  (Doc. # 59, n.2.)  That may be, but there is no evidence to suggest AG King promoted any of them to Attorney IV.

entitled to summary judgment on Ms. Adams's claims that he discriminated against her when he chose not to promote her to Attorney IV.  *See Holland v. Gee*, 677 F.3d 1047, 1055 (11th Cir. 2012) (recognizing that once an employer provides a legitimate, nondiscriminatory reason for his actions, the plaintiff must meet it "head on and rebut it").

## 2.   *Ms. Adams was not promoted to chief of the DAH.*

Ms. Adams complains that Ms. Weller was promoted to chief of the DAH. Neither Defendant denies that that decision amounts to prima facie discrimination. Instead, they offer a legitimate, nondiscriminatory reason that Ms. Adams did not get the job: AG King did not think she was a good enough lawyer.  True, Ms. Adams did work in the DAH for over a decade before Ms. Weller got the job.  But AG King did not think "merely sitting in a position . . . for an extended period of time [was] alone enough to make someone the right choice to be the Division Chief."  (Doc. # 51, at 44.)  As mentioned above, AG King held the opinion that Ms. Adams was "not a good lawyer" (Doc. # 51, at 45) and "not very smart" (Doc. # 59, at 9).  Thus, AG King has offered a legitimate reason he did not promote Ms. Adams:  He thought a better lawyer than she should head the DAH.  *See Chapman v. AI Transp.*, 229 F.3d 1012, 1034 (11th Cir. 2000) ("[S]ubjective reasons are not the red-headed stepchildren of proffered nondiscriminatory explanations for employment decisions.

Subjective reasons can be just as valid as objective reasons."). Again, the burden is on Ms. Adams to rebut AG King's proffered nondiscriminatory reason with some evidence of pretext.

Again, she fails. Ms. Adams's evidence suggests she spent a long time working as an ALJ, that some people thought she was good at that job, and that her former boss thought she deserved a raise. She cites no evidence, however, to suggest she was fit to head the DAH, no evidence that AG King thought she was a good lawyer, and no evidence that she was more qualified than (or even as qualified as) Ms. Weller, who got the job. (As Defendants point out, Ms. Weller had an exemplary resumé, boasting experience as a chief administrative law judge,[9] a first assistant United States attorney, a partner at a law firm, and a law clerk for a federal judge.)

In short, Defendants have submitted evidence that AG King did not promote Ms. Adams to chief because he did not think she was up to the task. Ms. Adams has

---

[9] Plaintiffs doubly emphasize that Ms. Weller cared for her special needs daughter while she worked as an administrative law judge: "She was the only ALJ in that division, taking the place of Ricky Meadows who had broken his hip, and she was working part time, writing her opinions at home *and focusing on caring for her special needs daughter at the same time*." (Doc. # 59, at 3 (emphasis in original).) It is unclear why Plaintiffs thought that fact was so important, but the OAG accuses them of making a "thinly-veiled suggestion that Weller's administrative and managerial experience – which the record evidence demonstrates is exceptional – is somehow of no import because of her daughter's needs." (Doc. # 66, at 7.) As the OAG points out, however, that conclusion would require the court to indulge "the exact type of stereotypical inference that the statutes under which Plaintiffs are suing are designed to prevent." (Doc. # 66, at 7.)

failed to present any evidence to suggest otherwise. Thus, AG King is entitled to summary judgment on Ms. Adams's claim that she should have been promoted to chief of the DAH. *Holland*, 677 F.3d at 1055.

### 3. AG King reduced operations at the DAH.

Plaintiffs' next complaint does not have to do with a promotion they did not get. This one has to do with a job they could not keep. A few months after Ms. Weller took over, AG King reduced the size of the DAH to just one employee.[10] Ms. Weller stayed, but Plaintiffs were transferred to different divisions.

Plaintiffs argue their transfers from the DAH amount to prima facie discrimination. Although Defendants deny that point, the authority they cite bears little relevance here – those decisions only held that minor changes in work assignments did not amount to adverse employment actions. *See, e.g., Davis v. Town of Lake Park*, 245 F.3d 1232, 1245 (11th Cir. 2006) (holding an employee did not suffer an adverse employment action when he temporarily lost the title "officer in charge"). But the Eleventh Circuit has recognized that a change in work assignments

---

[10] The parties have not agreed how to characterize this move. The OAG calls it the "dissolution" of the DAH. (Doc. # 52, at 26.) AG King says he "reduced the scope of the DAH." (Doc. # 51, at 27.) Plaintiffs alternately (and confusingly) say that AG King "abolish[ed]" the DAH and that "the division was not in fact abolished, nor limited to those hearings that were statutorily required." (Doc. # 59, at 27.) But everyone agrees AG King transferred everyone out of the DAH but Ms. Weller, so the court will call it a reduction in size.

might rise to the level of Title VII discrimination when the change is so "substantial and material that it does indeed alter the terms, conditions, or privileges of employment." *Id.* Defendants have not given the court any reason to think Plaintiffs' transfers to entirely different divisions to perform completely different jobs do not meet that standard. Accordingly, the court will assume Plaintiffs have established their prima facie case.

Defendants respond with two legitimate reasons that AG King reduced the size of the DAH. The first has to do with money – AG King thought the government's resources were not being utilized to their fullest in the DAH. The second is what AG King calls the "Burford/Ely fiasco." Basically, that situation involved a dispute in which Ms. Adams thought she was ethically prohibited from changing an opinion she wrote, while Ms. Weller believed the DAH could not ethically issue the opinion until it was changed. That incident caused AG King to lose faith that the DAH could effectively carry out its mission, and he decided the cure was to reduce the division's size to a bare minimum. (Ms. Weller stayed on as the sole hearing officer so she could hear cases the OAG was statutorily required to hear.)

Plaintiffs submit no evidence that those reasons are pretextual. Instead, they only argue (without citation) that "King's reasons for abolishing the DAH . . . do not stand up under scrutiny." (Doc. # 59 at 27.) But there is no evidence to suggest AG

King's proffered reasons for reducing the size of the DAH are false, so Plaintiffs have not borne their burden of showing pretext.  *Springer*, 509 F.3d at 1349 ("[A] reason is not pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." (quotations omitted)).  Thus, summary judgment is due on Plaintiffs' claims based on their transfers out of the DAH.

### 4.   *Ms. Grant was not promoted to chief of the Violent Crimes Division.*

According to Ms. Grant, AG King transferred her to the DAH in a scheme to keep her from becoming chief of the Violent Crimes Division.  But whatever plans AG King had to keep Ms. Grant out of the top spot in that division never came to fruition because the sitting chief never left his post – at least not before Ms. Grant retired.  At best, Ms. Grant's evidence suggests AG King would have given the job to someone outside of her protected class if he had the chance.  But he never did.  Because Ms. Grant cannot identify a similarly situated individual who was promoted to chief of Violent Crimes, her failure to receive that promotion does not amount to a prima facie case of discrimination.

### 5.   *Neither Plaintiff was promoted to chief of the Welfare Fraud Division.*

Both Ms. Adams and Ms. Grant complain that a white man was promoted to chief of the Welfare Fraud Division two years out of law school.  But neither of them applied for that promotion, and neither of them wanted the job.  In fact, AG King

offered that job to Ms. Grant, but she turned him down.  And although Ms. Adams never got the offer, she would not have accepted it unless it came with a pay increase to Attorney IV.  (Doc. # 65, at 12.)  The man who received the promotion took the job at the Attorney III pay grade.  Plaintiffs cannot complain that they did not receive a promotion that they never applied for and did not want.  *See Springer*, 509 F.3d at 1348 (noting failure-to-promote claims require evidence the plaintiff applied for the job).

### 6.    *Ms. Grant was transferred to the Capital Litigation Division.*

Finally, Ms. Grant makes an argument that hardly deserves mention:  She complains she suffered discrimination when AG King transferred her to the Capital Litigation Division.  But Ms. Grant makes no effort to fit that transfer into the *McDonnell Douglas* framework, and she identifies no similarly situated individual who was treated more favorably than her.  Ms. Grant may not have liked her new job as a brief writer, but "the protections of Title VII . . . do not extend to everything that makes an employee unhappy." *Davis*, 245 F.3d at 1242.  Accordingly, Ms. Grant has failed establish a prima facie case of discrimination with regard to her transfer to capital litigation.

**C.**    **Summary judgment is due on Plaintiffs' retaliation claims.**

To establish a prima facie case of retaliation, Plaintiffs must each present evidence sufficient for a reasonable juror to infer three things: (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression. *See Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).  When Ms. Weller took the job as chief of the DAH, Plaintiffs both filed grievances complaining of racial discrimination – Ms. Adams filed hers on July 31, 2008 (Doc. # 51 at 23); Ms. Grant's followed four days later on August 4 (Doc. # 51 at 24).  No one disputes that those grievances amounted to protected conduct under Title VII.[11]

But most of the instances of alleged retaliation Plaintiffs suffered do not amount to adverse employment actions.  *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006) (defining "adverse employment action" as one that is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination").  For example, Plaintiffs complain that they did not get their annual performance evaluations after Ms. Weller took over, which meant neither of them could get a raise.  But that does not amount to an adverse

---

[11]   As far as the evidence shows, those are the only two instances of Plaintiffs engaging in protected conduct.

employment action because neither of them was even eligible for raises, evaluation or no.  Likewise, Ms. Grant complains that she received a written reprimand, but she submits no evidence suggesting that reprimand amounted to an adverse employment action.  *See Hall v. Dekalb Cnty. Gov.*, No. 12-10101, 2013 WL 104810, at *8 (11th Cir. 2013) (finding a written counseling did not amount to an adverse employment action when the plaintiff "failed to explain how it negatively impacted his employment").  And although Plaintiffs complain that Ms. Weller micromanaged their work and marked up their opinions "with red ink, like a third grade paper"[12] (Doc. # 59, at 14), those are not the sorts of things that might "dissuade a reasonable worker from making or supporting a charge of discrimination."  *Burlington*, 548 U.S. at 57.  These instances all amount to the sort of "petty slights and minor annoyances that often take place at work and that all employees experience."  *Id.* at 68.  They cannot support Plaintiffs' claim that they suffered illegal retaliation.

The reduction of the DAH, on the other hand, may well amount to an adverse employment action.  But even if it does, Plaintiffs have no evidence to suggest their complaints *caused* the downsizing.  Where, as here, four months separate protected

---

[12] Interestingly enough, no one argues that Ms. Weller's revisions were unwarranted.  If Ms. Weller's criticisms were constructive, it is hard to imagine how they could amount to adverse employment actions; otherwise, Title VII would allow employees to sue their superiors for forcing them to do good work.

conduct from an adverse employment action, a plaintiff alleging retaliation cannot prove causation by relying on temporal proximity alone. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) ("A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough." (quotations omitted)).  But that is all Plaintiffs have done, so they fail to establish a prima facie case of retaliation.

## V.  CONCLUSION

Accordingly, it is ORDERED that AG King's motion for summary judgment (Doc. # 48) is GRANTED.

It is further ORDERED that the OAG's motion for summary judgment (Doc. # 47) is DENIED in part and GRANTED in part as follows:

(1)     With respect to Ms. Grant's Title VII failure-to-promote claim based on Julia Weller's promotion to chief of the DAH,  the motion for summary judgment filed by the OAG and AG Strange  (Doc. # 47) is DENIED;

(2)     In all other respects, the motion for summary judgment filed by the OAG and AG Strange (Doc. # 47) is GRANTED.

In other words, only Ms. Grant's Title VII claim against the Office of the Attorney General based on Julia Weller's promotion will proceed.   Summary

judgment is granted on all the claims brought by Ms. Adams and all the claims made against AG King or AG Strange.

DONE this 17th day of May, 2013.

_____ /s/ W. Keith Watkins _____
CHIEF UNITED STATES DISTRICT JUDGE

24